IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KATHY R. HICKS,                          )
                                         )
          Plaintiff,                     )
                                         )
vs.                                      )        Case No. CV-02-TMP-1230-S
                                         )
JRH RISK SERVICES, INC.,                 )
                                         )
          Defendant.                     )

## MEMORANDUM OPINION

This cause is before the court on the motion for summary judgment filed by the defendant, JRH Risk Services, Inc., ("JRH") on August 14, 2002. After various extensions of time for discovery, the motion was briefed and argued by the parties on September 30, 2003. The parties have consented to the exercise of final dispositive authority by the undersigned magistrate judge, pursuant to 28 U.S.C. § 636(c).

## I. Summary Judgment Standards

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine

issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. <u>Celotex</u>, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." <u>Id</u>. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Id</u>. at 324 (quoting Fed. R. Civ. P. 56(e)). When the nonmoving party does not respond, "summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). The nonmoving party may not merely rest on her pleadings. <u>Celotex</u>, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Id</u>. at 322.

After the plaintiff has had the opportunity to respond to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id</u>. at 248. "[T]he judge's function is not himself to

2

weigh the evidence and determine the truth of the matter but to determine whether there is a genuine

issue for trial." Id. at 249.  His guide is the same standard necessary to direct a verdict:  "whether

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law."  Id. at 251-52; see also Bill Johnson's

Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983).


II.  Undisputed Facts from the Plaintiff's Perspective

       Applying these standards to the evidence before the court, the following facts are undisputed

or, if disputed, are viewed most favorably for the plaintiff, the nonmoving party.  In October 1994,

plaintiff Hicks became employed as a receptionist at a company known as Southern Life-Styles,

which was a subsidiary of a company known as Southern Energy Homes, Inc.  As part of her

employment, she applied for medical-insurance coverage through her employer, which became

effective on October 24, 1994.  Although the plaintiff's husband, Roger, also was an employee of

Southern Energy Homes, he did not have a separate medical insurance policy, but was covered as

a dependent on his wife's policy.

       On or about November 14, 1994, plaintiff learned that she was pregnant.  She was informed

by Karen Woodard, an employee of Southern Energy Homes who handles employee insurance

matters, that her pregnancy was covered without any waiting period.  During January 1995, plaintiff

was informed that her employment would be terminated when Southern Life-Styles and its parent,

Southern Energy Homes, merged operations and her receptionist position became unnecessary.  Prior

to her last day of employment, January 27, 1995, plaintiff's husband, Roger, applied for and received

medical-insurance coverage as an employee of Southern Energy Homes, naming his wife as a

3

dependent on his policy. Again, Ms. Woodard informed plaintiff and her husband that her pregnancy would be covered.

Plaintiff's daughter was born on June 4, 1995, three and a half weeks early. Plaintiff's obstetrician opined, based on ultrasound, that the child's due date was between July 2 and July 15, 1995, suggesting the possibility that plaintiff became pregnant after she became employed on October 24, 1994, but, of course, well before her husband's health-insurance coverage became effective in January 1995.

Medical-insurance coverage was provided to employees of Southern Energy Homes, Inc., and its subsidiary, Southern Life-Styles, through the "Employee Health Benefit Plan for the Employees of Southern Energy Homes, Inc.," which was first effective on February 4, 1993. The Plan Employer and Administrator was Southern Energy Homes, Inc, and the Plan Trustee was Keith Brown, the chief financial officer and controller of Southern Energy Homes. The Plan Coordinator was identified as Karen Woodard. Handling of claims was contracted to defendant, JRH Risk Services, Inc., identified in the Benefit Plan Summary Description as the Plan Supervisor. (Plaintiff's Ex. 2, p. 1).

The Plan Document describes the Plan as follows:

> The Plan is self-funded from the Employer/Employee contributions and benefits payments are made, pursuant to the Plan provisions, from the portion of these contributions which have been placed in the Benefit Trust Account. The Benefit Trust Account for this Plan is maintained in accordance with the provisions of the Service Agreement between the Plan Administrator and the Plan Supervisor (Contract Administrator).

(Plaintiff's Ex. 2, p. 2). At page 12 of the Plan Document are the following definitions:

NAMED FIDUCIARY

4

> The person who has the authority to control and manage the operation and administration of the Plan. The Named Fiduciary of the Plan is the Employer (Plan Administrator).

PLAN SUPERVISOR

> The firm providing administrative services to the Employer in connection with the operation of the Plan and performing certain functions including underwriting enrollment applications, maintaining current Plan data, billing, processing and payment of claims and providing the Employer with any other information deemed necessary by the Plan Administrator.

PLAN COORDINATOR

> The person providing services to the employees on behalf of the Employer in connection with the operation of the Plan, including enrolling of new employees in the Plan and providing claim forms. The Plan Coordinator is named on the Benefit Plan Summary Description sheet of this document.

The claims procedures described in the Plan provides the following in pertinent part:

> Written proof of claim must be given to the Plan Supervisor by the end of the contract year following the year in which the expense is incurred.... Claims will be paid immediately upon receipt of acceptable written proof from the available trust fund deposits made by the Employer.

* * *

> If a claim is not paid in full, the Plan Supervisor will furnish notice to the claimant which will specify the reason or describe any additional information required to perfect the claim. Upon written request by the claimant within sixty (60) days after notice is received, the Plan Administrator will review the claim in question and give a final written decision on the review within sixty (60) days or one hundred twenty (120) days under special circumstances, after such request is received.

(Plaintiff's Ex. 2, p. 23).

Following the birth of her child, plaintiff submitted claims for payment of the doctors' and hospital expenses incurred during the pregnancy and birth. Because plaintiff no longer was employed at the time, the claims were considered under her husband's coverage. The claims were

5

rejected by defendant in August 1995, explicitly on the ground that the pregnancy predated the effective date of the coverage provided to her as a dependent on her husband's coverage.

The plaintiff first filed suit against defendant in the Circuit Court of Jefferson County, Alabama, on June 4, 2001, alleging breach of contract. Defendant removed the complaint to this court on May 16, 2002, asserting that because the complaint alleged that defendant was a claims administrator under the Plan, the action was removable under ERISA super-preemption. The defendant now seeks summary judgment, arguing that it is not a suable fiduciary under ERISA and that any state-law breach of contract claim that is not preempted is barred by the limitation period established in the Plan.

### III.  Is This an ERISA Action?

The first question the court must address is whether this action can properly be regarded as brought under ERISA.  If so, it was properly removed and treated as an ERISA action notwithstanding the complaint's statement of a breach-of-contract action.  If it is not an ERISA action, however, there was no basis for removal, and the court would lack subject-matter jurisdiction, requiring a remand to the state court.  Although neither party has questioned the court's subject-matter jurisdiction, the court must always be alert to the lack of jurisdiction and remand the case if it is lacking.

Plaintiff's well-pleaded complaint in state court alleged a cause of action for breach of contract; no mention was made of ERISA or any other federal-law theory of recovery.  Defendant removed the case to this court, arguing that the claim was completely preempted, or super preempted, by ERISA.  In Ervast v. Flexible Products Co., 346 F.3d 1007 (11th Cir. 2003), the court

6

of appeals had the opportunity to explore super preemption as a basis for removal jurisdiction. First,

the court distinguished between complete preemption as a basis for federal removal jurisdiction and

mere defensive preemption, which does not support removal.  The court wrote the following:

> Not all state law claims are completely preempted and may be subject to ERISA
> defensive preemption only.  What is often confused is that these are two different
> questions.  The issue of complete preemption is jurisdictional; meaning, if the claims
> are not completely preempted, they are not properly removed and must be remanded
> to state court.  Land [ v. CIGNA Healthcare of Fla., 339 F.3d 1286, 1290 (11th Cir.
> 2003)].  The defensive preemption issue, however, is substantive; therefore, either
> in state or federal court, when a state law claim is brought, the defendant may raise
> the defense that the claims are preempted by ERISA under § 1144, and should be
> dismissed.  Super preemption, on the other hand, recharacterizes the state law claim
> into a federal claim under § 1132, so long as the other three Butero [v. Royal
> Maccabees Life Insurance Co., 174 F.3d 1207, 1212 (11th Cir. 1999)] elements are
> present.

Id. at 1014.  Thus, to be removable under the ERISA super preemption or complete preemption

doctrine, a well-pleaded state-law complaint must meet the four elements identified in Butero, which

are as follows:

> We start with the superpreemption issue because, for the reasons explained above,
> it ultimately decides the existence of federal subject-matter jurisdiction.  As it turns
> out, some claims are superpreempted, and others are not.  Here's the rule: ERISA
> superpreemption exists only when the "plaintiff is seeking relief that is available
> under 29 U.S.C. § 1132(a)."  Whitt, 147 F.3d at 1330.  Regardless of the merits of
> the plaintiff's actual claims (recast as ERISA claims), relief is available, and there is
> complete preemption, when four elements are satisfied.  **First**, there must be a
> relevant ERISA plan.  See id.; Kemp v. International Business Machs. Corp., 109
> F.3d 708, 713 (11th Cir. 1997).  **Second**, the plaintiff must have standing to sue under
> that plan.  See Engelhardt v. Paul Revere Life Ins. Co., 139 F.3d 1346, 1350 n. 3
> (11th Cir. 1998).  **Third**, the defendant must be an ERISA entity.  See id.; Franklin
> v. QHG of Gadsden, Inc., 127 F.3d 1024, 1029 (11th Cir. 1997); see also Morstein v.
> National Ins. Servs., Inc., 93 F.3d 715, 722 (11th Cir. 1996) (en banc) (no preemption
> at all--not even defensive preemption--when the defendant is "a non-ERISA entity"
> and the claims do not "affect relations among principal ERISA entities as such").
> **Finally**, the complaint must seek compensatory relief akin to that available under §

7

> 1132(a); often this will be a claim for benefits due under a plan. See Engelhardt, 139
> F.3d at 1354; Franklin, 127 F.3d at 1029.

Butero v. Royal Maccabees Life Insurance Co., 174 F.3d 1207, 1212 (11th Cir. 1999). Thus, federal

removal jurisdiction exists in the ERISA complete preemption context only if "a (1) relevant ERISA

plan exists, under which a (2) plaintiff with standing is suing (3) an ERISA entity for (4)

"compensatory relief akin to that available under § 1132(a); often this will be a claim for benefits

due under a plan." Ervast v. Flexible Products Co., 346 F.3d 1007, 1013 (11th Cir. 2003).

Under the evidence of this case, the first, second, and fourth elements are not seriously

disputed. Clearly, an ERISA plan relevant to the issue of plaintiff's pregnancy expenses existed, and

she was a beneficiary of the plan as a dependent under her husband's coverage.[1] Likewise, the fourth

element of super preemption is met because the breach of contract relief sought by plaintiff is "akin"

to the relief she would seek under § 1132(a), that is, payment of benefits covering the expenses of

her pregnancy and childbirth. Although defendant removed the case to this court, it now contends

that it is not an ERISA entity, but a mere claims administrator with no true discretion or authority

over the management of the plan or its assets. While perhaps not anticipated by the defendant, the

effect of its argument is the conclusion that the court lacks subject-matter jurisdiction, requiring the

complaint to be remanded to state court.

The court agrees with defendant that it is not an "ERISA entity," suable under the terms of

this Plan. First, the defendant is nothing more than a claims administrator, acting at the direction and

subject to review by the employer and Administrator, Southern Energy Homes, which is not a party

---

[1] The relevant coverage is that which was provided to her husband, not her own during the 90 days she was employed. Plainly, the rejection of coverage by defendant was based upon the plaintiff's husband's coverage as an employee, not the plaintiff's, which ended when her employment ended in January 1995.

in this case.  "ERISA entities are the employer, the plan, the plan fiduciaries, and the beneficiaries under the plan."  Morstein v. National Insurance Services, Inc., 93 F.3d 715, 722 (11ᵗʰ Cir. 1996).  The defendant is not the employer, the plan, or a beneficiary under the plan.  The court also agrees that it is not a plan fiduciary.  ERISA defines a fiduciary as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan....

See 29 U.S.C. § 1002(21)(A).  Further, the Eleventh Circuit has elaborated on the definition, saying:

> ERISA does not regulate the duties of non-fiduciary plan administrators.  As such, non-fiduciaries cannot be held liable under ERISA.  Howard v. Parisian, Inc., 807 F.2d 1560, 1564-65 (11th Cir.1987).  As the Supreme Court has recently explained,
>
>> ERISA defines a fiduciary as one who "exercises any discretionary authority or discretionary control respecting management of [a] plan or exercises any authority or control respecting management or disposition of its assets."  29 U.S.C. § 1002(21)(A)(i).  A fiduciary has "authority to control and manage the operation and administration of the plan," 29 U.S.C. § 1102(a)(1), and must provide a "full and fair review" of claim denials, 29 U.S.C. § 1133(2).
>
> Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, ___, 109 S. Ct. 948, 955, 103 L. Ed. 2d 80 (1989).  As Judge Freeman stated in ruling on this issue in the district court, "a plan administrator who merely performs claims processing, investigatory, and record keeping duties is not a fiduciary.  See Howard, 807 F.2d at 1564."  Connecticut General processed claims and disbursed benefit payments pursuant to Plan terms under an administrative services agreement with Grand Union.  Connecticut General did not contract to provide Grand Union with benefits insurance for Grand Union employees.
>     Grand Union did no more than "rent" the claims processing department of Connecticut General to review claims and determine the amount payable "in accordance with the terms and conditions of the Plan."  Administrative Services Agreement § 2(a)(i).  Grand Union reserved the right to review any and all claim denials.  Id. at § 2(b).  An insurance company does not become an ERISA "fiduciary" simply by performing administrative functions and claims processing within a framework of rules established by an employer, Gelardi v. Pertec Computer Corp.,

9

761 F.2d 1323, 1325 (9th Cir. 1985), especially if, as in this case, the claims processor has not been granted the authority to review benefits denials and make the ultimate decisions regarding eligibility. Howard, 807 F.2d at 1564; DeGeare v. Alpha Portland Indus., Inc., 652 F.Supp. 946, 962 (E.D. Mo. 1986) (payment of claims pursuant to provisions of benefits plan does not clothe administrator with discretionary authority to such an extent as to make administrator's role that of a fiduciary); Munoz v. Prudential Insur. Co. of America, 633 F.Supp. 564 (D.C. Colo. 1986) ("ability to make policy decisions outside of a pre-existing or separate framework of policies, practices and procedures" determines ERISA fiduciary status).

Baker v. Big Star Division of the Grand Union Co., 893 F.2d 288, 289-290 (11th Cir. 1989). The same is true of the defendant in this case. It did not provide insurance coverage; the plan was self-funded by employer and employee contributions into a trust. The trust was maintained by the employer with its CFO as the trustee. Defendant did nothing more than receive and process the claims submitted by Southern Energy Homes's employees. The employer and administrator, Southern Energy Homes, expressly retained the right and obligation to review all claims rejected by defendant. The ultimate authority for paying claims, therefore, rested with Southern Energy Homes, not the defendant. Defendant had no authority to make decisions about paying claims "outside the preexisting framework" of the Plan. By merely performing these administrative functions of receiving and processing claims, auditing claims, and handling subrogation, all at the direction of and subject to review by the employer, defendant did not take on the mantle of a fiduciary.

Having concluded that the defendant in this case is not an ERISA entity from whom relief provided by ERISA can be obtained, the court also reaches the conclusion that the plaintiff's breach of contract action against defendant is not completely preempted by ERISA. Absent complete preemption, the plaintiff's complaint was improperly removed to this court. Plainly, the well-pleaded complaint itself alleges no federal cause of action for purposes of § 1331 jurisdiction, nor

10

is there complete diversity between the parties for § 1332 jurisdiction. Whether removal was proper or not is determined by the facts and pleadings as they existed at the moment of removal, not by subsequent amendments. That the plaintiff later amended her complaint, at the direction of the court, to allege expressly an ERISA action does not change the fact that no complete or super preemption authorized the removal when it occurred. The court lacked subject-matter jurisdiction to direct the amendment, just as it now lacks subject-matter jurisdiction to resolve the merits of the breach-of-contract claim.[2] The court's only option is to remand the action to the Circuit Court of Jefferson County, Alabama.

## IV. Conclusion

The court concludes that it lacks subject-matter jurisdiction. ERISA super or complete preemption does not apply because the defendant acted only as a ministerial claims administrator, not a fiduciary suable under ERISA. Consequently, the breach-of-contract claim pled in state court cannot be recharacterized as an ERISA claim and it should not have been removed. Lacking any other jurisdictional ground, the court will remand the action to the Circuit Court of Jefferson County for resolution of the original breach-of-contract claim. A separate order of remand will be entered.

---

[2] Of course, the court expresses no opinion about whether ERISA *defensive* preemption might apply. That is a substantive matter that must be addressed by a court with jurisdiction over the case.

The Clerk is DIRECTED to forward a copy of the foregoing to all counsel of record.

DONE this ____16ᵗʰ____ day of March, 2004.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE

12